UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>NEW INDIANAPOLIS HOTELS, LLC doing business as HAMPTON INN, NOBLE MANAGEMENT COMPANY, LLC (Added per Amended Complaint of 2/25/11.),<br><br>Defendants. | No. 1:10-cv-01234-WTL-DKL |

## **REPORT AND RECOMMENDATION**

This matter is before the Court on a *Motion for Contempt* by Plaintiff, Equal Employment Opportunity Commission ("EEOC"). [Dkt. 143.] The Honorable William T. Lawrence, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 147.] On October 31, 2014, the Magistrate Judge conducted an evidentiary hearing to determine whether Defendants complied with their obligations under a Consent Decree. For the reasons set forth below, the undersigned recommends the EEOC's Motion decision be **GRANTED in part** and **DENIED in part** and compensatory damages be imposed as described below.

1

I. **Background and Procedural History**

   **A. The Consent Decree**

The underlying action in this contempt proceeding was a race discrimination lawsuit brought by the EEOC pursuant to Title VII of the Civil Rights Act of 1991. Rather than go to trial, the parties entered into a Consent Decree on September 20, 2013, fully resolving the claims in the lawsuit. [Dkt. 118.] The Consent Decree required Defendants to take several actions to remedy the discrimination, including offering reinstatement to three former housekeeping employees. The Consent Decree also set forth hiring procedures, recordkeeping and reporting requirements to be effective for five years.

   **B. EEOC's Contempt Motion**

On September 19, 2013, the EEOC filed a *Motion to Enforce Consent Decree*, alleging Defendants failed to comply with multiple provisions of the Decree. [Dkt. 128.] Over the next several months, the parties were able to reach a resolution as to some of the alleged violations. The EEOC filed its *Motion for Contempt* on March 26, 2014, addressing the remaining issues. [Dkt. 143.] Again, the parties worked diligently and resolved several points of contention. On October 3, 2014, the parties filed *Joint Stipulations for the October 31, 2014 Hearing* considerably narrowing the issues to be determined at the evidentiary hearing. [Dkt. 165.][1] Pending before the Court are the following determinations:

- Whether Defendants violated Paragraph 7 of the Consent Decree by failing to reinstate Shantelle Moore, Lora Starkes and Samantha Hampton to available housekeeping positions and, if so, appropriate backpay calculations;

---

[1] In addition to the issues addressed at the hearing, the parties agreed Defendants violated certain posting, training and record keeping portions of the Decree. Relief for these violations was agreed upon in Joint Stipulations 105, 109 and 111. [Dkt. 165.]

- Whether Defendants intentionally destroyed employment records and, if so, the appropriate remedy;

- Appropriate remedy for violating Paragraph 6 of the Consent Decree (new hiring procedure);[2]

- Appropriate remedy for violating Paragraph 8 of the Consent Decree (recordkeeping);[3] and
- Whether the EEOC is entitled to attorney fees for time spent enforcing the Consent Decree.

I. **Discussion**

A. **Violation of Consent Decree**

In order to succeed on a petition for contempt, the plaintiff must show by clear and convincing evidence that: (1) the court order sets forth an unambiguous command; (2) the defendants violated that command; (3) the defendants' violation was significant, meaning it did not substantially comply with the order; and (4) the defendants failed to take steps to reasonably and diligently comply with the order. *F.T.C. v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009).

There is no dispute that the Consent Decree, approved on September 20, 2012, required Defendants to reinstate Moore, Starkes and Hampton to the next three housekeeping positions on terms no less favorable than other housekeepers. [Dkt. 165, Joint Stipulations 1-2.] There also is no dispute that Defendants hired Cassandra Cook as a housekeeper on November 5, 2012, before offers were made to Moore, Starkes or Hampton. [Dkt. 165, Joint Stipulation 11-12.] Defendants likewise stipulated that they

---

[2] Defendants stipulated to the violation of Paragraph 6 but not the remedy. [Dkt. 165, Joint Stipulation 106.]
[3] Defendants stipulated to the violation of Paragraph 8 but not the remedy. [Dkt. 165, Joint Stipulation 107.]

3

hired at least 20 other housekeepers *before* offers were made to Moore, Starkes or Hampton. [Dkt. 165, Joint Stipulations 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 43, 45, 48, 50, 52, 54, 58, 60, 62 and 64.]

The parties explored several areas of disputed fact through testimony from Moore, Starkes, Hampton and Defendants' management employees. For example, Moore and Starkes each testified that they were not offered a job by Defendants. In fact, each of them inquired as to job availability with employees at the front desk of the hotel and were told the hotel was not taking applications. Defendants asserted, through testimony from General Manager Christie Wilson, they offered Moore and Starkes a housekeeping job via letters dated August 8, 2013 [Plaintiff's Ex. 134 at A and B.] Moore and Starkes denied receiving these letters.

The EEOC's cross-examination of Wilson casted doubt on her credibility as to whether the letters were actually sent to Moore and Starkes. However, the resolution of this factual dispute is not necessary. Defendants stipulated that they hired multiple other housekeepers before offering jobs to Moore, Starkes or Hampton. Based upon this stipulation, Defendants violated the Consent Decree. The Court likewise does not need to resolve the disputed facts surrounding Hampton's subsequent employment with Defendants. Hampton testified that she was given limited hours beginning in August of 2013 and no hours after September of 2013. Wilson testified that she offered Hampton the hours that Wilson believed Hampton was able to work due to child care obligations. Wilson further testified that she believed Hampton voluntarily abandoned her job after failing to report to work for two weekend shifts. Yet Hampton testified that she only

4

missed one shift, and it was because Wilson did not return her call inquiring as to the work schedule. Again, the resolution of these disputed facts is not necessary. The Consent Decree required Defendants to offer Hampton, Starkes and Moore the first three housekeeping positions available. Defendants stipulated that they hired multiple other housekeepers first. This constitutes clear and convincing evidence that Defendants violated Paragraph 7 of the Decree.

The EEOC also asserts Defendants intentionally destroyed employment records in violation of the Consent Decree. Specifically, the decree requires Defendants to maintain housekeeping applicant log sheets which include the applicant's name, date of application and the outcome of the application. Defendants are to maintain these log sheets and the applications for one year as required by 29 C.F.R. § 1602.14. Based upon this alleged intentional destruction of records, the EEOC argues it is entitled to an adverse inference "to ensure that any uncertainties in computing back wages, due to record destruction, be resolved in favor of the EEOC."[4] [Dkt. 171 at FN 1.] To trigger an adverse inference, the EEOC must establish not only that Defendants destroyed records, but that the records were destroyed in bad faith. *See Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). Here, the EEOC did not present clear and convincing evidence that Defendants destroyed employment records therefore the Court does not reach the question of bad faith.

---

[4] As will be discussed, ultimately the issue of adverse inference became irrelevant when Defendants accepted the EEOC's backpay calculations.

Former Vice President of Operations Ross Lamoreaux testified that he was instructed by Defendants' owner, Hemant Thaker, to destroy employment applications and other paperwork submitted by unsuccessful job applicants. Lamoreaux further testified that prior to the EEOC's site inspection in February 2014, he and Defendants' counsel re-created from computer records some housekeeping files that had been discarded.  Mr. Lamoreaux *did not* testify that he actually destroyed any records, only that he was instructed to do so.  Lamoreaux's testimony was contradicted by General Manager Christie Wilson, who denied destroying employment applications and testified that Mr. Thaker never advised her to destroy records.  Other than Lamoreaux's testimony, the EEOC offered no evidence that Defendants destroyed records much less intentionally destroyed records for the "purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008).  The Court finds the EEOC's allegation that Defendants violated the Consent Decree by intentionally destroying employment records is not supported by clear and convincing evidence.

## II. <u>**Remedy and Damages**</u>

Having determined that clear and convincing evidence shows Defendants violated Paragraph 7 of the Consent Decree, the Court must determine what remedy or sanction is appropriate.  There are two categories of sanctions for civil contempt.  Remedial sanctions seek to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience of the court order.  *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). Coercive sanctions, by contrast, seek to induce future

behavior by attempting to coerce a party to comply with the consent decree. *See Latrobe Steel Co. v. United Steelworkers of Am., AFL–CIO*, 545 F.2d 1336, 1344 (3rd Cir. 1976).

The EEOC seeks both types of sanctions. It seeks remedial sanctions in the form of backpay for Moore, Starkes and Hampton. The EEOC also seeks coercive sanctions in the form of a daily fine for failure to comply with the hiring procedure and recordkeeping requirements set forth in Paragraphs 6 and 8; a two-year extension of the term of the Consent Decree; offers of employment to Moore, Starkes and Hampton and reimbursement of the attorney's fees and costs the EEOC incurred in bringing the contempt motion and conducting the evidentiary hearing.

In determining an appropriate sanction, the Court's goal is to compensate Moore, Starkes and Hampton for the losses they suffered as a result of Defendants' violations of the Consent Decree and to coerce Defendants into complying with the Decree in the future. The Court agrees with the remedial sanctions proposed by the EEOC of backpay from the date Defendants hired Cassandra Cook (November 2012) through the date an offer of reinstatement is either accepted or rejected. The Court further agrees with most of the coercive sanctions proposed by the EEOC as outlined below.

The Court disagrees that the EEOC is entitled to attorney's fees. An award of attorney fees following a finding of civil contempt is at the discretion of the court. *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981). However, statutory enforcement provisions specifically exclude the EEOC from receiving fees as a remedy. "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, *other than the Commission* or the United States,

7

a reasonable attorney's fee (including expert fees) as part of the costs …" 42 U.S.C.A. § 2000e-5(k) (emphasis added). In addition, through the course of the proceedings relating to Defendants' counsel's *Motion to Withdraw Appearance*, the Court has become aware that Defendants are in significant arrears in their payments to their own counsel. In light of 42 U.S.C.A. § 2000e-5(k), Defendants' financial position and their liability for a substantial amount of backpay, the Magistrate recommends the Court decline to award the EEOC attorney's fees. [5]

**The Magistrate Judge therefore recommends the Court issue the following ORDER**:

**IT IS HEREBY ORDERED THAT** Defendants are in contempt of court for failing to comply with terms of the Consent Decree, in particular, Paragraphs 6, 7 and 8. Plaintiff's *Motion for Contempt* with regard to these violations is **GRANTED**. Based upon the evidence submitted by the EEOC concerning wages,[6] the Court awards backpay to be paid within 30 days of the date an offer of reinstatement is either accepted or rejected. Consistent with Plaintiff's Exhibit 126, backpay amounts through October 2014 are as follows:

- Shantelle Moore: $12,800.76

---

[5] The Court is aware the EEOC recently was awarded fees for bringing a contempt motion in *EEOC v. Supervalu, Inc*. 2014 WL 6791853 (N.D. Ill. Dec. 2, 2014). The court in that case, however, did not address 42 U.S.C.A. § 2000e-5(k). This Court, which is not bound by the decisions of other district courts, cannot reconcile a fee award for the EEOC with the plain language of the statute and does not believe an award of fees is appropriate, as discussed above.

[6] Although Defendants disputed that the EEOC is entitled to monetary damages, they did not challenge the backpay calculations presented by the EEOC.

- Lora Starkes: $17,583.36

- Samantha Hampton: $16,190.04

Backpay shall continue to accrue from November 2014 until an offer of reinstatement is either accepted or rejected at a rate of $784.35 per month minus interim earnings. [Plaintiff's Exs. 121, 122 and 124].

**IT IS FURTHER ORDERED** that Defendants shall offer Moore, Starkes and Hampton the **first three housekeeping positions** to become available following this Order. Defendants shall immediately notify the EEOC in writing of the open position(s). The EEOC will then have 14 calendar days to relay the offer to Moore, Starkes and Hampton and notify Defendants if anyone accepts the position(s). If each of the women declines the offer, or if the EEOC fails to communicate an acceptance within 14 calendar days of being notified of the position, Defendants may seek an external applicant for the position. After Defendants have extended three offers through the EEOC, their reinstatement obligation will expire.

**IT IS FURTHER ORDERED** that: (1) Defendants shall review compliance with Paragraph 6 on a monthly basis and beginning February 2015 provide a monthly report to the EEOC by the 15th of each month, on the number of housekeeping applicants and the identity and race of all housekeeping hires, along with copies of applicant flow sheets, applications and new hire documents for the previous month; (2) Defendants shall be required to distribute applications to any housekeeping applicant who asks for an application or inquires about employment, for the duration of Paragraph 6 of the Decree (subject to a fine of $250 per violation, to be paid to the Court); (3) the EEOC shall be

permitted to inspect Defendants' premises and/or records created and maintained pursuant to Paragraph 6 of the Decree on a random basis, if it so chooses; (4) Defendants shall be fined $500 per day, payable to the Court, for failure to implement the process required by Paragraph 6 of the Consent Decree beginning February 2015; (5) Defendants shall be fined $100 per day for late monthly reporting; and (6) Defendants shall be subject to a penalty of $250 per day, payable to the Court, for failure to grant the EEOC full access to its employment records.

**IT IS FURTHER ORDERED** that: (1) Defendants shall retain all current housekeeping employment records as well as all housekeeping employment records that are created for the duration of the Decree, including, but not limited to work schedules, applications, background checks and payroll records. If applicable, other housekeeping employment records such as interview notes, termination notices, evaluations, appraisals, discipline, also shall be retained for the duration of the Decree. Defendants shall be shall be subject to a $500 fine, payable to the Court, for the destruction of or failure to retain any employment related record; (2) Defendants shall review recordkeeping on a monthly basis for the duration of the Decree and beginning February 2015 provide a monthly report to the EEOC, by the 15th of each month, certifying compliance for the previous month; (3) the EEOC shall be permitted to inspect Defendants' housekeeping employment records on a random basis, if it so chooses; (4) Defendants shall respond to any record requests within 15 calendar days, subject to a fine of $100 per day, payable to

the Court; and (6) Defendants shall be fined $100 per day for late reporting and $250 per day for failure to grant the EEOC access to its records, with fines payable to the Court.[7]

The EEOC's Motion for Contempt is **DENIED** with regard to its allegation that Defendants intentionally destroyed employment records in violation of the Consent Decree and its request for attorney's fees as a coercive sanction.

III. Conclusion

For the reasons set forth above, the Magistrate Judge respectfully recommends the District Court **GRANT in part** and **DENY in part** the EEOC's Motion and impose sanctions on Defendants as outlined above.

**Notice Regarding Objections**

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d

---

[7] The EEOC seeks to extend the duration of the Consent Decree by two years. However, the Court notes the Decree already is in effect until September 20, 2017. If Defendants comply with the Decree beginning February 2015, the Court finds nearly three years to be a sufficient time period for enforcement. The Court may extend the Decree at a later date if Defendants fail to comply.

11

629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Date: 01/09/2015

*[signature: Denise LaRue]*

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert Patrick White
CASEY GILSON P.C.
pwhite@caseygilson.com

Kevin Doherty
DOHERTY & PROGAR LLC
kwd@doherty-progar.com

Edward Dyer D'Arcy, Jr.
DOHERTY & PROGAR LLC
edd@doherty-progar.com

Christopher R. Reinkall
DOHERTY & PROGAR, LLC
crr@doherty-progar.com

Aimee Lynn McFerren
E.E.O.C.
aimee.mcferren@eeoc.gov

Jonathan Paul Bryant
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
jonathan.bryant@eeoc.gov

Laurie A. Young
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
legal.station@eeoc.gov

Michelle Eisele
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
michelle.eisele@eeoc.gov

Nancy Dean Edmonds
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
nancy.edmonds@eeoc.gov